# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.G. and D.G.**

**No. 19-0616** (Greenbrier County 18-JA-60 and 18-JA-61)

**FILED**

**April 6, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother B.B., by counsel Martha J. Fleshman, appeals the Circuit Court of Greenbrier County's June 5, 2019, order denying her request for an improvement period and terminating her parental rights to L.G. and custodial rights to D.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Kristopher R. Faerber, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for an improvement period and terminating her parental and custodial rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2018, the DHHR filed an abuse and neglect petition against petitioner after she tested positive for amphetamine and opiates upon the birth of L.G. The petition further alleged that L.G. was born drug-exposed.[2] In spite of the positive drug screens, petitioner denied illegal drug use or substance abuse issues. An initial preliminary hearing was convened in November of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The petition alleged the child's umbilical cord tested positive for amphetamine, methamphetamine, opiates, morphine, and codeine.

1

2018, where the court ratified the children's removal from petitioner's custody. The hearing was then continued and rescheduled for December of 2018, as petitioner retained new counsel and court-appointed counsel was dismissed. Prior to the continued preliminary hearing, the DHHR asserted that it tried to schedule services with petitioner, but that no contact or communication occurred between petitioner and the provider despite "numerous attempts" which included "[twenty-eight] messages; [and] four face-to-face attempts to the sister's home," where petitioner was residing. During the two-month period, petitioner also failed to complete any drug screens and was therefore barred from contact with infant L.G. In December of 2018, the circuit court held the continued preliminary hearing and ratified the children's removal from petitioner's custody.[3]

In February of 2019, the circuit court held an adjudicatory hearing. Petitioner did not attend but was represented by counsel. The guardian ad litem moved the circuit court for an order prohibiting unsupervised visitation between petitioner and the children. The circuit court granted the motion, citing "allegations of substance abuse and improper contact as risks to the [c]hildren that necessitate a prohibition of unsupervised visitation." The hearing was then continued "as counsel [for petitioner] ha[d] recently been appointed." At the continued hearing, petitioner appeared in person and stipulated that L.G. tested positive for controlled substances at birth and required treatment for neonatal abstinence syndrome. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing and neglecting parent for both children. Thereafter, petitioner filed for a post-adjudicatory improvement period.

In April of 2019, the circuit court held a hearing on petitioner's motion for an improvement period. Prior to the hearing, the DHHR and a Court Appointed Special Advocate ("CASA") submitted written reports which opposed petitioner's motion for an improvement period because she missed supervised visits with infant L.G. and tested positive on some drug screens while avoiding other screens altogether. The CASA reported that petitioner took only three of the eight required drug screens from January through March of 2019. Petitioner also "altered" a document from the Day Report Center, falsely claiming negative results for at least one mandated drug screen. At the hearing, petitioner requested another continuance seeking "additional information regarding L.G.'s treatment in the hospital after birth" so petitioner could attempt to prove that "some of the positive drug screens in her case were false positives." Petitioner's motion was denied. The circuit court did, however, allow petitioner to renew her motion for a post-adjudicatory improvement period at a final dispositional hearing.

The circuit court held a final dispositional hearing in May of 2019. During the hearing, petitioner indicated that "after struggling mightily," she was "willing to acknowledge . . . that she has a substance abuse problem." In the course of her testimony, however, petitioner still denied she deliberately abused amphetamine or opiates, admitting only under questioning that "there is something in them" that caused her to abuse these substances. Also, at the hearing, petitioner presented her motion for a post-adjudicatory improvement period, but the circuit court denied the request. The circuit court considered petitioner's substance abuse; lack of acknowledgment of the abuse; failure to participate in services offered; and inability to care for the children. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the

---

[3]Petitioner did not appear in person for the hearing but was represented by counsel.

children to terminate petitioner's parental and custodial rights. Accordingly, the court terminated petitioner's parental and custodial rights by its June 5, 2019, order.[4] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she sought to improve through treatment of her substance abuse problem, including inpatient rehabilitation. Petitioner also argues that she "acknowledged she has a substance abuse problem" during her dispositional hearing testimony and indicated that she would participate in services. In light of this, she argues that the circuit court should have granted her a post-adjudicatory improvement period. We disagree.

Notably, petitioner does not dispute that she missed several drug screens and supervised visits with L.G., including a two-month period where petitioner failed to provide a negative screen or submit to screens. While it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied such abuse, even when confronted with positive drug screens and other evidence. Despite this evidence, petitioner asserts she was "willing to receive treatment," and that she would have complied with all of the terms and conditions of an improvement period.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the

---

[4]Petitioner is not the mother of D.G. D.G.'s nonabusing mother retains her parental rights pursuant to a shared parenting plan with D.G.'s father entered in a prior family court proceeding. Both L.G. and D.G. were placed in the custody of the nonabusing father with a permanency plan of remaining in his care.

conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Petitioner disputes the circuit court's finding that she failed to acknowledge her substance abuse because she testified, "obviously there's something in the medicine that I can't stop taking." Petitioner also takes issue with the refusal of the circuit court and DHHR "to acknowledge that any of the positive drug screens could have been the result of prescription medications [petitioner] was taking or that any could have been false positives caused from the combination of multiple, legal substances" prescribed to her. However, even if some of petitioner's drug screens were false positives, a point the DHHR disputes, petitioner admitted that not "all of the things that are showing up [on drug screens] could be false positives." As such, it is clear that petitioner failed to acknowledge the full scope of her substance abuse issues below. Given petitioner's failure to fully acknowledge her drug addiction and how her actions constituted abusive and neglectful behavior, the granting of an improvement period would have been futile. Accordingly, we find no error in the circuit court's denial of her motion.

Next, petitioner alleges the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(b)(5). However, the same evidence set forth above supports the termination of petitioner's parental and custodial rights. West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental and custodial rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given her untreated substance abuse issues. While it is true that petitioner may be able to undergo some treatment in the future for her substance abuse, such possible improvement was based on pure speculation. Indeed, petitioner blamed false positive laboratory results and denied a

4

substance abuse problem on several occasions. Further, petitioner often failed to avail herself of the DHHR's services, missing several drug screens and testing positive on others. This resulted in her missing several visitations with the children. While petitioner also takes issue with the timeframe from adjudication to termination, arguing that she "should have been given additional time and an opportunity to demonstrate that she could correct the conditions" of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted).

Finally, petitioner argues that the DHHR provided no "remedial and reunification services" because the DHHR opposed petitioner's motion for an improvement period. The DHHR, however, provided petitioner with many services. Shortly after the abuse and neglect petition was filed in November of 2018, a service provider attempted to establish contact with petitioner but was unable to do so despite the provider's "[twenty-eight] messages; [and] four face-to-face attempts." During the two-month period of November and December 2018, petitioner failed to schedule or complete any drug screens and was thus barred from contact with infant L.G. Petitioner then continued to miss or fail drug screens throughout the remainder of the proceedings. While petitioner argues that "the [DHHR] could have recommended that [petitioner] be granted an improvement period," the burden for granting an improvement period falls upon petitioner and the DHHR's opposition to petitioner's motion for an improvement period is not a failure to provide services. Accordingly, we find no error in the circuit court's finding that there was no reasonable likelihood the conditions of abuse and neglect could have been substantially corrected in the near future and that termination was necessary for the children's welfare.

While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the decision of the circuit court, and its June 5, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison